UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | Case No. 1:08-CR-137-EJL |
|---|---|
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| TAMMY L. LAW, | |
| Defendant. | |

**INTRODUCTION**

Before the Court are two pending motions,[1] the first filed by Defendant Tammy Law requesting a hearing regarding her claim of exemption in certain monies the Government seeks to garnish, and the second filed by Ms. Law's mother, Linda Johnson, who moves to quash subpoenas served by the Government requesting financial information from her bank. The Court conducted a hearing on June 27, 2011. At the conclusion of the hearing, the Court explained its decision regarding the denial of the

---

[1] District Judge Edward J. Lodge referred Dkt. 108 and all related post judgment proceedings to the undersigned magistrate judge.

REPORT AND RECOMMENDATION - 1

Motion to Quash. This Report sets forth in more detail the reasons for the Court's recommendation that the Motion be denied.

## BACKGROUND

Between 2002 and 2008, Defendant Tammy Law ("Law") was the manager of the Collections Department for Pioneer Federal Credit Union. On June 18, 2008, Ms. Law entered a plea of guilty pursuant to the terms of a written plea agreement to charges of embezzlement from the Credit Union. The total amount the Government alleged Ms. Law embezzled, and to which Ms. Law plead guilty, was approximately $421,000.00. On October 6, 2008, Ms. Law was sentenced to the custody of the Bureau of Prisons for a period of 46 months, to be followed by a term of Supervised Release for 3 years. Judgment was entered thereafter for restitution in the amount of $564,215.00. (Dkt. 12.) Since entry of judgment, the Government has been actively and continuously seeking to recover the money on behalf of the Credit Union. To that end, it has issued several writs of execution and conducted numerous judgement debtor exams, including examinations of Ms. Law's mother, Linda Johnson, in an effort to discover either the whereabouts of the original sum, or to liquidate Ms. Law's assets to pay the debt.

Ms. Law is currently in custody. (Dkt. 131). She has a projected release date of July 16, 2011. (Mem. at 2, Dkt. 119). While technically in custody of the Bureau of Prisons, Ms. Law lives at the Port of Hope Residential Recovery Center, and attends Boise State University ("BSU"), and works approximately 15-20 hours per week at BSU. (Response at 2, Dkt. 112.) Ms. Law did not open her own bank account at Home Federal

**REPORT AND RECOMMENDATION - 2**

Bank until March of 2011. (*Id.*) Prior to that time, Ms. Law had funds belonging to her deposited into her mother's account at Home Federal Bank. (*Id.*; Reply at 2, Dkt. 119). The Government learned that $5,331 of student loan money[2] was deposited into Ms. Johnson's bank account, withdrawn, and then given to Ms. Law. (*Id.*)

On April 14, 2011, the Government filed an application for writ of continuing garnishment upon Boise State University ("BSU"). (Dkt. 107.) The Government represents that $487,290.82 is still owed toward the restitution balance, and it believes that Ms. Law obtained aid from BSU, as well as wages, that is not exempt from execution to satisfy the debt. On April 29, 2011, Ms. Law filed a claim of exemption and requested a hearing, claiming exemptions for (1) wearing apparel and school books; (2) fuel, provisions, furniture and personal effects; (3) books and tools of a trade, business, or profession; (4) judgments for support of minor children; and (5) wages, salary or other income. (Dkt. 115.)

On March 8, 2011, the Government conducted a debtor examination of Ms. Johnson in an effort to discern the disposition of the proceeds received from BSU. The Government requested that Ms. Johnson bring copies of her bank statements and other financial records for the previous three months. (Dkt. 92.) On March 10, 2011, the Government issued subpoenas to Home Federal Bank requiring the bank to produce

---

[2] The Government represents that BSU records show Ms. Law received $5,331.00 from a Federal Pell grant, a $150.00 "SLEAP" grant, and a $1,500.00 computer stipend. (Response at 2, Dkt. 112.) At the hearing, the Government clarified it was also seeking garnishment of Ms. Law's wages.

**REPORT AND RECOMMENDATION - 3**

financial information from January 1, 2011, to February 28, 2011, information which Ms. Johnson produced on March 8 at the debtor examination. (Mot. at 3, Dkt. 108.) On April 8, 2011, the Government notified Ms. Johnson of two additional subpoenas to Home Federal Bank demanding financial information from February 1, 2011 to March 31, 2011, and from April 1, 2011 to April 30, 2011. (Mot. at 3 Ex. B, Dkt. 108.)

Ms. Johnson objects to the April 8, 2011 subpoenas[3] and asserts three arguments in support of her motion. First, she claims the subpoenas are unduly burdensome under Fed. R. Civ. P. 45 because she is a non-party witness. Second, she asserts that the Government failed to specify the purpose of the subpoenas in violation of the Right to Financial Privacy Act. And finally, Ms. Johnson claims the financial records are not related to a legitimate law enforcement purpose.

The Government, on the other hand, contends it has an interest in all property in which Ms. Law has an interest. Therefore, to the extent Ms. Law utilized her mother's bank account, the Government asserts it has legitimate interest in reviewing Ms. Johnson's bank and financial records. The Government contends its subpoenas complied with the Right to Financial Privacy Act, considering its investigation is ongoing and the notice to Ms. Johnson included the case caption.

The Government believes that, by permitting her daughter to use her bank account, Ms. Johnson has assisted Ms. Law and hindered the Government's ability to collect

---

[3] At the hearing, Ms. Johnson represented that she seeks only to quash the April 8, 2011 subpoenas, and that the March 10, 2011 subpoenas were complied with.

restitution. Ms. Law confirmed during her recent debtor examination that the money she received from BSU was deposited into her mother's bank account, but that she does not have records of how the money was spent. During the recent debtor examinations, the Government has reason to believe that several large sums were deposited into Ms. Johnson's account during the same period and several transfers were made by Ms. Johnson to other accounts.

## ANALYSIS

**1. Ms. Law's Claims of Exemption**

18 U.S.C. § 3613 enumerates the civil remedies for satisfaction of an unpaid fine or restitution order. A fine or an order of restitution constitutes a lien in favor of the United States "on all property and rights to property of the person fined," arises upon entry of judgment, and continues for 20 years or until the liability is satisfied, set aside, or terminated. 18 U.S.C. § 3613(c). The United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal or State law. 18 U.S.C. § 3513(a). One such procedure is a writ of garnishment under the Federal Debt Collection Practices Act ("FDCPA"), 28 U.S.C. § 3205. This statute provides, in pertinent part:

> A court may issue a writ of garnishment against property (including nonexempt disposable earnings) in which the debtor has a substantial nonexempt interest and which is in the possession, custody or control of a person other than the debtor, in order to satisfy the judgment against the debtor.

28 U.S.C. § 3205(a).

**REPORT AND RECOMMENDATION - 5**

At the hearing, the Government clarified its purpose for the Writ of Garnishment was to garnish Ms. Law's wages earned from BSU or future wages, not her student loan funds. 26 U.S.C. § 6334(a)(9) exempts from levy "wages, salary, and other income" not to exceed 25% of an individual's wages, and provided the individual earns more than a specified minimum amount. Upon the Government's acknowledgment that it sought only to garnish Ms. Law's wages according to the statutory scheme, Ms. Law represented that she has no objection to the Writ provided the Government requests amendment of the garnishment order. The Government has no objection to doing so. Therefore, no recommendation will be made regarding the claim of exemptions other than to require the Government to request an amended order.

**2. The Government's Subpoena**

At issue are the two subpoenas the Government served on April 8, 2011, requesting Ms. Johnson's bank and other financial records from February 1, 2011, to and through March 31, 2011, and for the period April 1, 2011, through April 30, 2011. (Mot. Ex. B, Dkt. 108-2).

### A. *Fed. R. Civ. P. 45*

18 U.S.C. § 3664(m) permits the Government to enforce an order of restitution by "all other available and reasonable means." 28 U.S.C. § 3015 authorizes the Government to conduct discovery regarding the financial condition of the debtor pursuant to the Federal Rules of Civil Procedure in an action on a claim for a debt. Fed. R. Civ. P.

**REPORT AND RECOMMENDATION - 6**

45(c)(3)(A)(iv) permits the Court to quash a subpoena served upon a non-party if it "subjects the person to undue burden."

Ms. Johnson contends that the Government's repeated requests for financial information, with no end in sight, impose an undue burden "akin to Chinese water torture." The Court disagrees. The Government is seeking to collect restitution of over $500,000.00. Based upon the testimony elicited at the debtors' examinations, Ms. Johnson had control over Ms. Law's finances. She permitted Ms. Law to deposit student loan funds into her personal bank account, received cash in the mail as well as other deposits to her bank account, and never asked her daughter any questions about where the money came from. (Mot. Ex. C, Dkt. 108-3.) Now, the Government represents neither Ms. Law nor Ms. Johnson appears to know how almost $7,000 was spent. (Response at 2, Dkt. 112.)

The FDCPA permits the Government to issue a writ of garnishment against property in the control of another to satisfy a judgment against the debtor. 28 U.S.C. § 3205(a). And, the judgment may be enforced against "all property or rights to property" possessed by the judgment debtor. Considering the student loan money was payable to Ms. Law and Ms. Law had rights in those funds despite them being deposited in Ms. Johnson's bank account, the Government is entitled to learn how the funds were disposed in its ongoing effort to partially satisfy the debt. By allowing Ms. Law to deposit money into Ms. Johnson's account, Ms. Johnson's financial history is subject to examination.

The Government seeks three months of financial information. The subpoenas are narrowly drawn to the relevant time period both before and after the deposits were made to Ms. Johnson's account. Accordingly, the Court finds that the subpoenas are not overly broad and constitute a reasonable effort on the part of the Government to request only those documents that are relevant to its investigation. Moreover, Ms. Johnson has not proffered how the request upon Home Federal Bank constitutes a burden upon her, other than she is tired of the repeated requests and the Government's persistence.

Perhaps at some point the Government's persistence may indeed result in a finding of undue burden, but the Government has requested records from the Bank and tailored its request to a limited time frame. Given Ms. Johnson permitted Ms. Law to utilize her personal bank account, the information may be relevant to the Government's investigation.

**B.** *Right to Financial Privacy Act*

12 U.S.C. § 3410(a) permits a "customer" of the financial institution from which financial records pertaining to him have been sought to object to a judicial subpoena. The applicant must set forth the reasons for believing that the financial records sought are not relevant to the legitimate law enforcement inquiry stated by the Government authority in its notice, or that there has not been substantial compliance with the provisions of this chapter. The applicant must file her objection within ten days of service or within fourteen days of mailing. 12 U.S.C. § 3410(a)(2).

The Government may obtain financial records pursuant to a judicial subpoena only if:

> (1) such subpoena is authorized by law and there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry;
> (2) a copy of the subpoena has been served upon the customer or mailed to his last known address on or before the date on which the subpoena was served on the financial institution together with the following notice which shall state with reasonable specificity the nature of the law enforcement inquiry:
> Records or information concerning your transactions which are held by the financial institution named in the attached subpoena are being sought by [the Government] in accordance with the Right to Financial Privacy Act of 1978 [12 U.S.C.A. § 3401 et seq.] for the following purpose . . .

12 U.S.C. § 3407(2). The notice must provide information to the recipient how to object to the subpoena. 12 U.S.C. § 3407(2).

The Government first asserts in its letters to Ms. Johnson that the Financial Privacy Act does not apply under 12 U.S.C. § 3413(e). That section states that the Act will not apply "when financial records are sought by a Government authority under the Federal Rules of Civil or Criminal Procedure or comparable rules of other courts in connection with litigation to which the Government authority and the customer are parties." The exemption is inapplicable here considering the "customer"—Ms. Johnson—is not a party to the case involving Ms. Law. Therefore, the Act applies.

The Government asserts its notice accompanying the April 8, 2011 subpoena substantially complies with the Act. The letter sent to Ms. Johnson did not state a

**REPORT AND RECOMMENDATION - 9**

particular purpose for the subpoena. However, the letter indicated that the Government is seeking to collect a debt, and the face of the letter identified the case name and case number. The statute requires that the nature of the inquiry be stated with "sufficient specificity." At the hearing, Ms. Johnson conceded she was aware of the Government's purpose to trace the disposition of the money she received on Ms. Law's behalf. At this stage in the proceedings, after numerous debtor's examinations to which Ms. Johnson has been a party, and considering she is aware of the debt owed by her daughter, the Court finds that Ms. Johnson received adequate notice. *See Rodriguez v. Fed. Sav. & Loan Ins. Corp.*, 712 F.Supp. 159 (N.D. Cal. 1989) (holding that adequate notice was given after the fact in papers filed in a proceeding to quash a subpoena under the Financial Privacy Act).

Turning to the merits, the Court must deny the motion to quash if there is "demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry." 12 U.S.C. § 3410(c). There appears to be little doubt that the law enforcement inquiry is legitimate. The Government is seeking information concerning money held by Ms. Johnson in her personal account on behalf of Ms. Law in its ongoing effort to collect over $500,000 in restitution.

As for relevancy, Ms. Johnson bears the burden of showing the records are not relevant. *Karlis v. S.E.C.*, 613 F.Supp.2d 150, 153 (D. Mass. 2009). If that burden is satisfied, the Government must show only that there is "a reasonable belief that the

**REPORT AND RECOMMENDATION - 10**

records are relevant." *Karlis*, 613 F.Supp.2d at 153. Ms. Johnson asserts that the money is now gone, and therefore the records are not relevant because she no longer has any involvement with her daughter's financial dealings.

The Government has stated it has a reasonable belief that approximately $7,000 in student loan funds, as well as repeated withdrawals and other deposits attributable to Ms. Law, are traceable to Ms. Johnson's account. The Government believes that Ms. Johnson's bank records will demonstrate when and how the money was spent, or at least lead to information showing how the money was spent, in its ongoing efforts to collect restitution. The Government alludes that Ms. Johnson is being less than truthful, considering neither she nor Ms. Law have kept any records of the money's disposition. (Response at 2, Dkt. 112.) In addition, the Government can find no evidence of how the initial $500,000 in embezzled funds were spent. Yet the Government has information that Ms. Johnson receives money from unidentified sources as well as from Ms. Law. (Mot. Ex. C, Dkt. 108-3.)

In *Karlis*, a wife who claimed to have no involvement in her husband's illicit financial dealings was of no moment considering the SEC had a reasonable belief that, on more than one occasion, funds were transferred to the husband's bank accounts from a company under investigation. *Karlis*, 613 F.Supp.2d at 153. The court found persuasive the SEC's argument that the relationship of husband and wife was sufficient grounds for its belief that the wife's bank records were relevant, and denied the motion to quash. *Id.*

In this case, the same facts are present. Ms. Johnson is Ms. Law's mother. Ms. Law has had contact with her mother while living at Port of Hope. On numerous occasions, the Government has learned of large deposits made to Ms. Johnson's account, including during the time period for which it requests Ms. Johnson's financial records, yet cannot find any evidence of the embezzled funds. The Government believes also that it may be able to trace the disposition of the recently acquired student loan proceeds and other deposits and withdrawals attributable to Ms. Law by examining Ms. Johnson's records. The Government's belief is reasonable, and the Court will recommend the motion to quash be denied.

## RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED that:**

1) The movant's Motion to Quash (Dkt. 108) be **DENIED**.

2) The Honorable Edward J. Lodge, District Judge, issue an order directing the United States to lodge a proposed Amended Order of Continuing Garnishment, consistent with its representations at the Hearing and with this Report and Recommendation.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.



DATED: June 28, 2011

Honorable Candy W. Dale
Chief United States Magistrate Judge